Argued December 8, 1921, reargued April 18, affirmed June 6, 1922.

# LOUGH *v.* STATE INDUSTRIAL ACCIDENT COMMISSION.

### (207 Pac. 354.)

**Master and Servant—Occupational Disease not Compensable as "Injuries" from Accident.**

1. In view of Section 6632, subdivision "d," Or. L., declaring that no claim for workmen's compensation shall be enforceable unless filed within a certain period "after the date upon which the injury occurred," and Section 6626, allowing compensation for personal injury by "accident caused by violent or external means," recovery can be had only for injuries referable to a certain fixed time not for occupational diseases.

**Master and Servant—Time for Filing Compensation Claim Runs from Date of Accident.**

2. Section 6632, subdivision "d," Or. L., providing that no claim for workmen's compensation shall be enforceable in nonfatal cases "unless filed within three months after the date upon which the injury occurred," refers to the date of the accident and inception of the injury, not the date of appearance of a consequent physical condition.

**Master and Servant—Compensation Lost by Delay in Filing Claim, Though Caused by Mental Incapacity.**

3. Under Section 6632, subdivision "d," Or. L., providing that no claim for workmen's compensation shall be valid or enforceable "unless filed within three months after the date upon which the injury occurred," the claimant, who by the injury for which he seeks compensation was rendered mentally incapable of filing such claim until after such time had elapsed, cannot recover, as the statute, having created the right of recovery, does not merely limit the remedy and, being general, allows of no exceptions.

From Multnomah: JOHN McCOURT, Judge.

In Banc.

AFFIRMED.

---

1. Incapacity resulting from occupational disease, see notes in Ann. Cas. 1916D, 694; L. R. A. 1916A, 106; L. R. A. 1917D, 113; L. R. A. 1918F, 872.

2. Question of time within which notice of injury and claim for compensation must be given or other steps taken within meaning of workmen's compensation acts, see note in Ann. Cas. 1917D, 867; Ann. Cas. 1918C, 1042; L. R. A. 1917D, 138; L. R. A. 1918E, 559.

For appellant there was a brief and oral arguments by *Mr. A. M. Crawford* and *Mr. W. C. Campbell.*

For respondent there was a brief over the names of *Mr. I. H. Van Winkle,* Attorney General, *Mr. J. A. Benjamin,* Assistant Attorney General, and *Mr. James West,* Assistant Attorney General, with an oral argument by *Mr. West.*

BURNETT, C. J.—Claiming to have been injured on October 1, 1919, while at work for a shipbuilding corporation in Multnomah County, Oregon, the plaintiff presented his petition for compensation to the State Industrial Accident Commission on April 3, 1921. The commission refused to allow him any compensation, and he appealed to the Circuit Court. A trial by jury was had in that court, resulting in the finding of a special verdict describing the injury and stating that as a result thereof plaintiff became partially demented, so that he was mentally incapable of filing a claim prior to the time when it was filed. Basing its action upon the fact that the claim had not been filed before the commission for more than a year after the happening of the accident by which he was injured, the Circuit Court confirmed the decision of the State Industrial Accident Commission rejecting it. The claimant appeals to this court.

The sole question presented for our consideration is the regularity of the order of the commission rejecting the claim, and the affirmance of that order by the Circuit Court. The ruling complained of depends upon the construction of subdivision d of Section 6632, Or. L., reading thus:

"No application shall be valid, or claim thereunder enforceable in nonfatal cases, unless such claim is filed within three months after the date upon which

the injury occurred, nor in fatal cases unless such claim is filed within one year after the date upon which the injury occurred.''

1. The petitioner asserts that while he was working on board a hull then in process of construction, a bolt fell upon his head from above, causing the injury, on October 1, 1919. Compensation is allowed to a workman, when injured under circumstances contemplated by the act, if he shall sustain ''a personal injury by accident arising out of and in the course of his employment, caused by violent or external means.'' As pointed out in *Iwanicki* v. *State Industrial Acc. Co., post,* p. 650 (205 Pac. 990), decided by this court April 25, 1922, the injury for which recovery can be had is one referable to a certain fixed point of time, and the law is not intended to, and does not cover what are termed ''occupational diseases,'' the approach of which is gradual and insensible before they culminate in death or restoration to health. The words ''date upon which the injury occurred'' plainly indicate a certain point of time, and not an extended period. Having in view the element of suddenness of the untoward event, we must say that, under our statute, the language refers to the date of the accident and the immediately consequent injury.

There are precedents, notably from Nebraska, Indiana and Massachusetts, where the court construes the occurrence of the injury to mean not its inception when the complainant was hurt, but the consequent progress and culmination of the injury received at the time of the accident. There are cases which hold under such statutes that the injured workman is entitled to wait until the culmination of his hurt, through its development and final progress to recovery, before making any claim to the commission.

In other words, such cases fix the occurrence of the injury at least at the climax and not at the beginning of the physical debility consequent upon the accident. They arise, however, under statutes differing largely from our own. Mainly they are instances where the employer is made directly liable to the injured employee under a schedule prescribed by the statute, and provision is made for giving notice as soon as practicable or as soon as the disability or insanity consequent upon the injury has been removed.

2. But there are no such provisions in our statute. Without equivocation it is said that the notice must be given within three months after the date upon which injury occurred. Something occurred or came into existence on October 1, 1919. The injury happened at that time. True, it may not have developed instantly its full effect. But the injury which had no existence prior to that date came into existence at that time. In other words, it occurred at that date.

The question then is: What is the effect, under this statute, of failing to present a claim to the Industrial Accident Commission for compensation until more than the three months had elapsed from the date mentioned? The state in pursuit of its public policy, by virtue of its police power, has formulated its bounty, to quote from the title of the act, "for the benefit, compensation and care of workmen." Whatever it be, whether a contract or a mere financial benefit created by the state, it had no existence prior to the enactment of the original Workman's Compensation Act so called, approved on referendum November 17, 1913. An injured workman has no cause of action against the Industrial Accident Commission, any more than a suitor would have an action against a court which decided an issue adversely to his interests. It is true, the statute has provided an appeal

from the decision of the commission to the Circuit Court and thence to the Supreme Court. Whatever it may be, the statute makes a provision before unknown to our laws. It is as though the state had made an offer to injured employees upon certain terms, so that even if we consider it as a contract, the party who would avail himself of the offer must accept it in the manner, at the time and on the terms it is made.

The three months mentioned are not a limitation on the time for commencing an action, within the meaning of the general statute of limitations. Whether it be a contract or a mere offer, that period of three months within which the claim must be presented is one of the essential ingredients of the contract or of the offer of the gratuity, and he who would avail himself of its benefits must pursue the statute as it is written. The rule of construction applicable to such a statute is well stated in *Van Steenwyck* v. *Washburn,* 59 Wis. 501 (17 N. W. 289, 48 Am. Rep. 532). In that case the statute provided for an election by a widow between the statutory dower and the provision made for her by the will of her deceased husband. It was claimed for her that because she was insane she was incapable of making an election, and hence was excused from doing so, although the statute creating the right made no mention of any exception on that account. The court said:

"Where the widow is sane, is *sui juris,* capable of making contracts, competent to bind herself by a legal obligation, the way is plain. She can elect whether she will take the devise or other provision made for her in the will of her husband, or whether she will claim that interest in his estate which the law gives to her. But when we come to apply the statute to an insane, a *non compos mentis,* one who

can exercise no intelligent judgment or choice, one who is not responsible for her acts, then it goes against our notions of right and justice. Still, the law is well settled that in the construction of statutes general words are to have a general operation, unless something is found in the statute itself which affords grounds for qualifying or restraining them. 'No exceptions can be claimed in favor of particular persons or classes unless they are expressly mentioned.' Dixon, C. J., in *Woodbury* v. *Shackleford,* 19 Wis. 60. The same principle was recognized and enforced in *Lindsay* v. *Fay,* 28 Wis. 177, and it is doubtless in accord with the great weight of judicial opinion on this subject. As the legislature has made no exception in the statute, the courts have no right to make one, because to do so would be legislation. Were we to hold that the statute does not include a widow of unsound mind, we should certainly be making an addition to it which the legislature has not seen fit to enact. The ill effects of holding that the statute did include an insane widow were most ably presented in the argument of respondents' counsel. These evil consequences, however proper for the consideration of the legislature, can really have no weight in giving construction to a statute which is plain and unambiguous in its language. The doctrine of an inherent equity, creating an exception as to any disability where the legislature has made none, must be abandoned, particularly in a country where the legislative power is distinct from the judicial. The result, therefore, on this point, is that we must hold that the general words in the statute have a general application, and since there is no exception as to an insane widow, the court can create none.''

An analogous principle was applied by Mr. Justice Bennett in *Bailey* v. *Oregon-Washington R. & N. Co.,* 97 Or. 471 (191 Pac. 782). In that case Henry Ploch in an early day settled upon a tract of land now within the limits of the City of Portland. The land had not then been surveyed by the general gov-

ernment, for want of which he could not make definite description in his notice of claim to the land. Before the survey was made he died, without having given notice of his claim. His heirs, the plaintiffs in the suit, were not aware of this situation for many years afterwards. Meanwhile other parties had settled upon the land and by mesne conveyances the defendant company had become the owner thereof. Commenting on this situation, Mr. Justice BENNETT said:

"The plaintiffs offer as an excuse for their failure to comply with the law, the death of the claimant and their lack of knowledge of his claim. This may be a moral excuse which would relieve them from a charge of negligence, but it is not a compliance with the law, which would give them title to the land."

The opinion goes on to quote with approval the language in *Frisbie* v. *Whitney*, 76 U. S. (9 Wall.) 196 (19 L. Ed. 668, see, also, Rose's U. S. Notes), as follows:

"The argument is urged with much zeal that because complainant did all that was in the power of anyone to do toward perfecting his claim, he should not be held responsible for what could not be done. To this we reply, as we did in the case of *Rector* v. *Ashley*, 6 Wall. (U. S.) 142 (18 L. Ed. 733), that the rights of a claimant are to be measured by the acts of Congress, and not by what he may or may not be able to do, and if a sound construction of these acts shows that he had acquired no vested interest in the land, then, as his rights are created by the statutes, they must be governed by their provisions, whether they be hard or lenient."

With these general principles of statutory construction and application in mind, we proceed to the consideration of cases more directly applicable, illustrating the principle that the terms of a statute

creating a right hitherto unknown, although some of
those terms be couched in matters of time, are all
constituent elements of the right itself and not mere
limitations upon the exercise of that right.    In *Cooke
v. Holland Furnace Co.*, 200 Mich. 192 (L. R. A. 1918E,
552, 166 N. W. 1013), as in this case, the complainant
was injured by being struck upon the head by a bolt
which fell from above.    This occurred on October
6, 1915, but he did not make claim for compensa-
tion until October 9, 1916.    The statute there pro-
vided that no proceedings for compensation for an
injury should be maintained, unless "notice of the
injury shall have been given to the employer three
months after the happening thereof and unless the
claim for compensation shall have been made within
six months after the occurrence of the injury."    The
court there held that although the terms "accident"
and "injury" are not synonymous, yet because the
accident produces the injury they are concurrent in
point of time, thus fixing the happening of the ac-
cident as the date of the occurrence of the injury.
The court reviews the authorities at length and con-
cludes with the declaration that:

"We are compelled to hold, must hold, unless we re-
sort to judicial legislation, that the legislature by
these two sections fixed the date of the injury at the
date of the accident, and not some remote date there-
after, when the injured employee became definitely
satisfied that he was disabled as a result of the ac-
cident."

A like case is *Kalucki* v. *American Car & Foundry
Co.*, 200 Mich. 604 (166 N. W. 1011, L. R. A. 1918F,
860).    Similar cases are *Bushnell* v. *Industrial Board*,
276, Ill. 262 (114 N. E. 496); *Haiselden* v. *Industrial
Board*, 275 Ill. 114 (113 N. E. 877); *O'Esau* v. *E. W.
Bliss Co.*, 188 App. Div. 385 (177 N. Y. Supp. 203);

*Poccardi* v. *Ott,* 83 W. Va. 166 (98 S. E. 69).   The reason for the rule is given by Mr. Justice WAITE in *The Harrisburg,* 119 U. S. 199, 214 (30 L. Ed. 358, 7 Sup. Ct. Rep. 140, see, also, Rose's U. S. Notes), as follows:

"The statutes create a new legal liability, with the right to a suit for its enforcement, provided the suit is brought within twelve months, and not otherwise. The time within which the suit must be brought operates as a limitation of the liability itself as created, and not of the remedy alone.   It is a condition attached to the right to sue at all.   No one will pretend that the suit in Pennsylvania, or the indictment in Massachusetts, could be maintained if brought or found after the expiration of the year, and it would seem to be clear that, if the admiralty adopts the statute as a rule of right to be administered within its own jurisdiction, it must take the right subject to the limitations which have been made a part of its existence.   It matters not that no rights of innocent parties have attached during the delay.   Time has been made of the essence of the right, and the right is lost if the time is disregarded.   The liability and the remedy are created by the same statutes, and the limitations of the remedy are, therefore, to be treated as limitations of the right."

A like case is *Lewis* v. *Pawnee Bill's Wild West Co.,* 6 Penne. (Del.) 316 (66 Atl. 471, 16 Ann. Cas. 903), where it is said, to quote from the syllabus:

"The Delaware statute of 1897 providing that no action for personal injuries shall be brought after the expiration of one year from the date when the injuries were sustained, being a special or independent statute of limitations, complete in itself, is not subject to the exceptions contained in the general statute of limitations, and consequently the absence from the state of the person whose negligence caused the injuries does not extend the time limited for the commencement of such action."

.The subject is treated at large and well annotated in the last-named publication. See, also, *Pomeroy's Petition,* 33 Mont. 69 (81 Pac. 629); *Rodman* v. *Missouri Pacific Ry. Co.,* 65 Kan. 645 (70 Pac. 642, 59 L. R. A. 704); *Boston & Me. R. R. Co.* v. *Hurd,* 108 Fed. 116 (56 L. R. A. 193); *Brunswick Terminal Co.* v. *National Bank,* 99 Fed. 635 (48 L. R. A. 625, 47 C. C. A. 615); *Rainey* v. *Grace,* 216 Fed. 449 (L. R. A. 1916A, 1149, note 47, at pages 1166 and 1167, 132 C. C. A. 509); *Osborne* v. *Grand Trunk Ry. Co.,* 87 Vt. 104 (88 Atl. 512, Ann. Cas. 1916C, 74); *Swisher* v. *Atchison etc. Ry. Co.,* 76 Kan. 97 (90 Pac. 812); *Richards* v. *Carpenter,* 261 Fed. 724.

3. Without making any exception in favor of the insane, the disabled or the infant, the legislature has seen fit to prescribe the terms upon which the bounty of the state may be enjoyed. Those who would avail themselves of the privilege thus extended must comply with its terms, and it does not lie within the power of any judicial tribunal, however beneficial it may be, to add terms that have not been put there by the law-making power. We may well regard this case as one of great misfortune, and yet we are powerless to extend relief where none is awarded by the statute. The judgment of the Circuit Court must be affirmed.                    Affirmed.

Mr. Justice McCourt did not participate in this decision.